UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| DAVID NUNEZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:12-CV-92 |
| § | |
| CITY OF CORPUS CHRISTI, TEXAS, *et* § | |
| *al*, § | |
| § | |
| Defendants. § | |

# ORDER

Before the Court is Defendant and Third Party Plaintiff Officer William Hobbs' Motion for Summary Judgment (D.E. 54). For the reasons set forth below, Officer Hobbs' motion is DENIED.

## BACKGROUND

This civil action comes before the Court pursuant to Title 42, United States Code, Section 1983. Plaintiff David Nuñez alleges that Defendant Hobbs violated his constitutional rights under the Fourth Amendment to the United States Constitution to be free from the use of excessive force by police officers in the detention of a suspect. Specifically, Plaintiff asserts that Officer Hobbs is liable for the unlawful use of deadly force because he shot Plaintiff several times without any immediate threat of death or serious bodily injury to him or others.

On June 25, 2011, Plaintiff David Nuñez, his friend Manuel Davila, and Plaintiff's brother were attending a party at the Bayfront Plaza Hotel in Corpus Christi, Texas when a confrontation erupted between them and another group of males at the party. At this point, Plaintiff and his friends decided to leave the party. Someone from the hotel called the police regarding the disturbance, and Officers Eric Smith, Andrew Jordan, and William Hobbs of the Corpus Christi Police Department (CCPD) were dispatched to the scene.

Plaintiff's friend, Davila, was driving a white Cadillac sedan, which was parked on the third floor of the hotel's parking garage. When they arrived, the CCPD officers parked their cars on the second floor of the parking garage, blocking off any exit to Davila or others. The CCPD officers then walked up the ramp to the third floor of the parking garage. Officer Smith arrived on the scene first and witnessed a disturbance involving several males around Davila's Cadillac.

What happened next is disputed by the parties. It appears that Officer Smith approached the Cadillac and attempted to get the suspects to exit the vehicle. The driver, Davila, put the vehicle in gear and attempted to exit the parking lot. In the process, the Cadillac made contact with Officer Smith. The vehicle then headed down the parking garage ramp toward the other officers. The vehicle passed Officer Jordan, who did not draw his weapon. Officer Hobbs, who was the farthest down the ramp, moved out of the way of the vehicle, and then fired five shots into the Cadillac's passenger compartment.

Officer Hobbs asserts that he was in fear for his life when he discharged his weapon; however, Plaintiff argues that Officer Hobbs' version of events is inconsistent

with the physical evidence and the forensic analysis performed by Plaintiff's experts. Plaintiff argues that the shots fired by Officer Hobbs entered the vehicle from the side or rear, indicating that any danger Officer Hobbs potentially faced had already passed by the time he discharged his firearm.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

The movant has the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to a judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant's initial burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325.  Once the movant has met its initial burden, the burden then

shifts to the non-moving party to demonstrate that summary judgment is not appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Rivera*, 349 F.3d at 247; *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material, controverted facts precluding summary judgment. *Anderson*, 477 U.S. at 248–49.  Additionally, the non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment").

## ANALYSIS

Officer Hobbs argues that he did not violate Plaintiff's Fourth Amendment rights; and furthermore, even if he did violate some constitutional interest, he is entitled to qualified immunity, as his actions did not violate clearly established constitutional law. (D.E. 54 at 4–6.)  The Court first considers the issue of whether there was a violation of a constitutional right, and second, whether that right was clearly established at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).

To obtain relief under Section 1983, Plaintiff must show that he was deprived of a right under the Constitution or laws of the United States. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1050 (5th Cir.

1993). A Section 1983 excessive force claim implicates the Constitution's Fourth Amendment prohibitions against unreasonable searches and seizures. To establish a Section 1983 claim for excessive force, a plaintiff must demonstrate (1) an injury, (2) that resulted from a use of force that was clearly excessive to the need, and (3) the excessiveness was objectively unreasonable. *Peterson v. Fort Worth*, 588 F.3d 838, 846 (5th Cir. 2009); *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. This requires the Court to look at the totality of the facts and circumstances of the case, including the threat of safety to officers and the public, and whether the suspect is resisting arrest or attempting to flee from officers. *Id.* Moreover, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle v. Bexar Cty*, 560 F.3d 404, 413 (5th Cir. 2009). Given the lack of bright lines for the Court to follow in making reasonableness determinations with regard to an officer's use of force, such questions often require the input of a jury, particularly when the facts are in dispute. *Id.* at 411.

In the case at hand, there is considerable dispute regarding the timing of Officer Hobbs' shots, the position of the vehicle at the time the shots were fired, and the

immediacy of the threat posed to Officer Hobbs. Defendant Hobbs asserts that the vehicle skidded out and struck Officer Smith, that it then drove toward Officer Jordan, who only narrowly escaped being struck by jumping between two cars, and that it then came pummeling toward Officer Hobbs; at which point, Officer Hobbs, in fear for his life and believing the vehicle would strike him, drew his revolver and fired at the vehicle to save his own life, the lives of the other officers, and to protect the public. (D.E. 54 at 2–3.) Plaintiff asserts, however, that the vehicle only brushed Officer Smith, and most crucially, that at the time Officer Hobbs fired his shots, there was no immediate threat of death or serious bodily injury to him, the other officers, or to the public in general. (D.E. 88 at 2–3.) The Court must view the summary judgment evidence in the light most favorable to the non-moving party.

In particular, the Court notes the forensic analysis by Carolyn Martinez (see deposition excerpts at D.E. 96-1 and photographs at D.E. 97-1), as well as the expert report of Richard Ernest (D.E. 98-1), both of which directly refute the testimony of Officer Hobbs and indicate that he was not in immediate danger of being struck at the time he fired his weapon. Of course, the Court must take into account the exigencies placed upon officers and the short amount of time from when the car was accelerating toward Officer Hobbs to when it passed his position that he had to perceive that the threat had passed. *See Hathawa v. Bazany*, 507 F.3d 312, 322 (5th Cir. 2007). The summary judgment evidence, however, does not conclusively demonstrate that there was insufficient time for Officer Hobbs to perceive that the threat had passed and adjust his actions accordingly. Viewing the evidence in the light most favorable to Plaintiff, a

rational jury could conclude that the vehicle did not pose an imminent threat of serious physical harm to Officer Hobbs at the time he discharged his weapon.

Moreover, it is not clear that the vehicle posed an imminent threat to the other officers or the public in general. It appears that the entrance to the garage was blocked by the police, and therefore, there was little risk of a high-speed car chase. While "[n]early any suspect fleeing in a motor vehicle poses some threat of harm to the public . . . , the real inquiry is whether the fleeing suspect posed such a threat that the use of deadly force was justifiable." *Lytle*, 560 F.3d at 415. There is no mention in Defendant Hobbs' version of the facts of any bystanders whose physical safety would have been immediately threatened by the vehicle, and "a suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is *per se* reasonable." *Id.* at 416. Accordingly, the Court finds that a rational jury could conclude that there was no imminent threat posed to the public justifying the use of deadly force.

Finally, it is not clear that firing into the back and passenger side of the vehicle was a reasonable method of addressing the threat. *See id.* at 412. Even if the vehicle continued to pose a threat of harm to Officer Hobbs or the other officers, a jury could still conclude that Officer Hobbs' response to this threat was not reasonable. *Id.* at 413. Thus, the Court finds that the evidence creates a genuine issue of material fact as to whether, from the perspective of a reasonable officer on the scene, the use of deadly force was objectively reasonable under the circumstances; and therefore, a rational jury could conclude that Officer Hobbs' actions constituted a violation of Plaintiff's Fourth

Amendment constitutional rights. The Court now turns to the second step of the qualified immunity inquiry.

At the second step of the qualified immunity analysis, the Court considers whether the constitutional right was clearly established at the time of the violation. For liability, the officer must have had "reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). In the Fifth Circuit, "[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing [suspect] who does not pose a sufficient threat of harm to the officer or others." *Lytle*, 560 F.3d at 417. This applies generally, as well as in the specific context of a suspect fleeing in a motor vehicle. *Id*. The Court thus concludes that the right in question was clearly established at the time of the shooting on June 25, 2011, and Officer Hobbs is not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendant William Hobbs' Motion for Summary Judgment (D.E. 54) is DENIED.

ORDERED this 7th day of August, 2013.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE